JUDE ALCEQUEIRE, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (6th Division)   No. 1—95—3857

Opinion filed September 19, 1997.

Norm Underwood, Jr., of Zion, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Monique N. O'Toole, Assistant Attorney General, of counsel), for respondents Human Rights Commission and Department of Human Rights.

Richard A. Devine, State's Attorney, of Chicago (Patricia M. Shymanski, John J. Murphy, and Jacob M. Rubinstein, Assistant State's Attorneys, of counsel), for respondents Cook County Management Information System and County of Cook.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Jude Alcequeire appeals the dismissal of his racial discrimination claim by the Illinois Human Rights Commission (Commission). The sole issue on appeal is whether the decision of the Commission dismissing petitioner's claim by reason of a lack of substantial evidence was an abuse of discretion or arbitrary and capricious. We affirm the Commission's decision.

Petitioner, a black male, was hired as a computer operator with the Cook County Management Information System (MIS) on August 8, 1985, suspended on August 26, 1992, and discharged from his employment on September 3, 1992. On October 6, 1992, petitioner filed a charge of discrimination with the Illinois Department of Human Rights (Department) and alleged discrimination by being suspended from his job and in retaliation for filing prior discrimination claims. Petitioner never alleged discrimination regarding his discharge.

The Department investigated petitioner's claims. The investigator conducted interviews with seven witnesses and examined numerous documents relevant to the petitioner's claims.

The investigation report revealed the following uncontested facts. Petitioner was scheduled to work overtime on August 22, 1992 (Saturday), and August 23, 1992 (Sunday). The purpose of the overtime work was to generate tax bills. Petitioner previously had complained that he was not allowed to work as much overtime as white employees. On August 22, 1992, petitioner's scheduling supervisor (Eugene Majka) telephoned petitioner's director (Joseph Yaeger) at home to complain that petitioner was sleeping on the job and performing poorly by interfering with the work that was to be generated. On August 23, 1992, director Yaeger called petitioner and told him not to report to work that day because of his alleged poor performance, including sleeping, the previous day (Saturday).

On August 24, 1992, director Yaeger wrote a memo to the chief administrative officer (Albert Pritchett) requesting permission to commence termination proceedings against petitioner "for (1) disrespect and insubordination to supervisors and management personnel; (2) sleeping on the job; and (3) threatening violence should he not be given his way." On August 25, 1992, petitioner was informed that he was suspended indefinitely.

In response to the discrimination charge, MIS asserted that petitioner was suspended for nonracial reasons. MIS submitted that petitioner

"had been repeatedly warned about his insubordinate behavior,

his excessive verbal and racial attacks against his supervisors and managers, his threats and intimidations of co-workers and of supervisors, as well as his poor work performance as indicated by his coming to work on Saturday, August 22, 1992, on an overtime basis to do very important work and continually sleeping on the job, which seriously reduced tax bill production for that day."

The Department interviewed seven witnesses that corroborated the position taken by MIS about petitioner's work history: (1) Joseph Yaeger (white), former director of petitioner; (2) Robert Farrington (white), assistant director of petitioner; (3) Thomas Ryan (white), clerk and coworker of petitioner; (4) Alfred Orrico (white), computer operator and coworker of petitioner; (5) Generall Voker (black and Liberian-American), computer operator and coworker of petitioner; (6) Mikal Ahmad (black), computer operator and immediate supervisor of petitioner on date of cause of petitioner's suspension; and (7) Don Ciesla (white), operations manager.

All of the witnesses stated that petitioner was always using racial epithets toward his coworkers, supervisors and managers. Petitioner's verbal attacks were variously described as "excessively aggressive" and "routine." Petitioner referred to black personnel who disagreed with him as "Uncle Toms" and to white personnel as "racists," "fascists" or "imperialists." In addition, petitioner sometimes delivered his tirades angrily and in a threatening or intimidating manner.

The interviews further revealed that, over the course of his employment, petitioner was verbally abusive, disrespectful, and insubordinate toward supervisors and managers and interpreted everything he did not like as a racial plot against him. Petitioner also had been warned orally, written up, and suspended.

Regarding the day of the incident causing petitioner's suspension (August 22, 1992), the investigation established that petitioner spent most of the time sleeping or talking on the telephone. Supervisors were required to wake up petitioner at least eight times and petitioner continually went back to sleep.

The investigation report also included letters, memos, and evaluations from petitioner's personnel file. The written information documented petitioner's performance and attitude during his employment with MIS. The documents demonstrate that petitioner was warned or disciplined about disrespect toward other personnel, not finishing work assignments without supervision, verbal abuse of his supervisor, constant bickering with coworkers, direct threats to hurt a supervisor in front of coworkers, intimidating supervisors and threatening coworkers. One letter stated that an employee who was

white (Stanley Szrajer) had been suspended for three days without pay for sleeping on the job in July 1988.

On August 9, 1994, following its investigation, the Department recommended a finding of lack of substantial evidence that petitioner was discriminated against on the basis of race. Regarding petitioner's claim that he was improperly suspended, the Department found that the evidence showed that petitioner was an unsatisfactory employee and had been repeatedly warned that his inappropriate behavior could result in suspension or discharge. Regarding petitioner's claim that he was suspended in retaliation for filing complaints opposing race discrimination, the Department found that a white employee (Stanley Szrajer) who had not filed a discrimination charge was suspended for sleeping on the job and a black employee who had formally complained of racial discrimination had not been indefinitely suspended. The Department found that petitioner was suspended for legitimate reasons and any disciplinary actions taken against petitioner were for good cause.

On September 12, 1994, petitioner filed a request for review of the Department's dismissal with the Commission. In response, the Department did not oppose the request and the Commission remanded the matter for further investigation. On April 7, 1995, after conducting a further investigation, the Department again dismissed petitioner's charge for lack of substantial evidence. Thereafter, the Department opposed a second request for review filed by petitioner. On October 6, 1995, the Commission upheld the Department's decision and dismissed the matter for lack of substantial evidence.

On appeal, petitioner asserts that the decision of the Commission is in error. We disagree.

■ The Illinois Human Rights Act authorizes the dismissal of a complaint based on a determination of "no substantial evidence." 775 ILCS 5/7A—102(D)(2) (West 1994). The term "substantial evidence" has been described as "more than a mere scintilla" but somewhat less than a preponderance. See *Metro Utility v. Illinois Commerce Comm'n*, 193 Ill. App. 3d 178, 184 (1990). Where the dismissal of the charge is based on lack of substantial evidence, the Commission determines whether there was "enough evidence to justify the filing of a complaint." *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994).

■ We review the decision of the Commission, not the Department. *Marinelli*, 262 Ill. App. 3d at 253. In our review of the Commission's decision to dismiss a complaint for lack of substantial evidence, we must determine if the Commission's action was arbitrary or capri-

cious or an abuse of its discretion. *Zunino v. Cook County Comm'n of Human Rights*, 289 Ill. App. 3d 133 (1997); *Marinelli*, 262 Ill. App. 3d at 253.

●3 In analyzing employment discrimination actions brought under the Illinois Human Rights Act, the Illinois Supreme Court adopted the three-part analysis enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989). First, the petitioner must establish, by a preponderance of the evidence, a *prima facie* case of unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179. Second, assuming that the first prong has been satisfied, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Zaderaka*, 131 Ill. 2d at 179. The third prong, if reached, requires proof by the petitioner that the employer's articulated reason was a pretext for unlawful discrimination. *Zaderaka*, 131 Ill. 2d at 179.

A conflict of authority exists on whether only the first prong of the *Zaderaka* analysis should be considered or whether the three-part analysis should be applied at this stage in the complaint's proceeding. *Zunino*, 289 Ill. App. 3d 133 (1997) (noted the conflict but did not resolve the issue) (and cases cited therein); *Whipple v. Department of Rehabilitation Services*, 269 Ill. App. 3d 554, 556 (1995) (considered only the *prima facie* prong) (and cases cited therein). In *Whipple*, the fourth district concluded "that a decision of the Commission dismissing a charge after only investigation by the Department must be based upon the insufficiency of a *prima facie* case ***. Going into the second or third prong of the rule *** would inherently bring into play a balancing of evidence." *Whipple*, 269 Ill. App. 3d at 556-57.

■ We disagree with the conclusion reached in *Whipple* and believe that the Commission's consideration of a dismissal of a discrimination charge for lack of substantial evidence need not be restricted to the *prima facie* prong. See, *e.g., Peck v. Department of Human Rights*, 234 Ill. App. 3d 334 (1992); *Luckett v. Human Rights Comm'n*, 210 Ill. App. 3d 169 (1989). To hold otherwise unnecessarily restricts the investigative authority of the Department and the Commission and wastes their limited resources on matters that can be more productively and efficiently handled.

■ In the present case, the Commission reached the second and third prongs of a discrimination analysis. The Commission concluded that the evidence established a lack of substantial evidence to support petitioner's claim that his suspension was based on race or in retaliation for opposing race discrimination. We affirm the Commis-

sion's decision, finding that the record overwhelmingly establishes that the actions taken by the employer were justified by legitimate, nonrace-related reasons. Petitioner was employed by MIS for seven years and had accumulated a personnel file filled with examples of petitioner's inappropriate behavior and poor work. The statements by the seven witnesses further provided ample evidence of petitioner's outrageous conduct. To have tolerated petitioner's conduct for seven years only exemplifies MIS' capacity to endure an employee who was unable to function in his job and with other personnel.

Affirmed.

THEIS and ZWICK, JJ., concur.