NO. 4-97-0625

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JAMELLE WEBB,                ) Administrative Review

          Petitioner,               ) of the Human Rights

          v.                        ) Commission

JACQUELINE LUSTIG, Chief Legal      ) No. 1996SF0536

Counsel of the Department of Human   )

Rights, THE ILLINOIS DEPARTMENT      ) 

OF HUMAN RIGHTS, and MASON COUNTY    )

SERVICE COMPANY,       ) 

Respondents. )

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner Jamelle Webb brings this direct review of an order of Jacqueline Lustig, chief legal counsel (Chief Counsel) of the Illinois Department of Human Rights (Department), sustaining the Department's dismissal of petitioner's charges against Mason County Service Company (respondent) of unlawful discharge from employ­ment based on her sex and as retaliation.  775 ILCS 5/8-

111(A)(1) (West 1996); 155 Ill. 2d R. 335. 

The issues are whether (1) the Department and the Chief Counsel used the correct legal standard for determin­ing whether petitioner offered suffi­cient substantial evidence to justify the issu­ance of the com­plaint; (2) the Department and the Chief Counsel erred in failing to consider the definition of sexual harassment contained in the Illi­nois Human Rights Act (Act) (775 ILCS 5/2-

101(E) (West 1996)) in evaluating peti­tioner's discharge for retaliation claim; and (3) the dismissal of the claims re­lating to discharge from employment vio­lated petitioner's right to due process under the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2).  We affirm.

Petitioner's charge of discrimination (Illinois Depart­

ment of Human Rights No. 1996SF0536) alleged she was hired on June 20, 1995, and discharged from her bookkeeper/secretary position on January 18, 1996; from August 1995 to January 1996, she was sexually harassed by plant manager Kenny Brown and Mike Hudgins, in and away from the workplace; and the general manager told her she was being discharged because it was just not working out and Brown did not believe their relationship could ever be restored.  In support of her claims for having been sexually harassed, discrimi­

nated against because of her sex, and retaliated against for opposing unlawful discrimination, petitioner further alleged there were no complaints about her job performance; the sexual harassment included disgusting remarks asking her about her breasts and tan legs; she objected to these comments and refused offers to drink beer with Hudgins; after Hudgins made sexually derogatory remarks to her and her boyfriend at the Havana Octoberfest, his behavior worsened and she reported him; although she complained to her supervi­sor, Darrell Batley, by mid-November 1995 her work environ­

ment became extremely hostile; on December 26, 1995, Hudgins and three other employees threw the shop phone at her; a dead mouse was placed in her desk drawer; Brown ignored her and refused to answer questions; she contacted Batley again, and he said he would talk to Brown, but he did not; and upon discharging her, Batley said he was sorry it had to end that way.

In its verified response, respondent employer admitted the dates of hire and discharge, stated petitioner was discharged for poor perfor­mance and for improperly performing her job duties, and denied the rest of petitioner's allegations.

On February 21, 1997, Rose Mary Bombela, Department Director, issued a notice of substantial evidence and a notice of dismissal.  There was a finding of substantial evidence to support the allegations of sexual harassment and harassment based on petitioner's sex.  The charges of discharge based on sex and discharge based on retaliation were dismissed.  Petitioner was advised she could appeal to the Chief Counsel and, if an Equal Employment Opportunity Commission (EEOC) number had been assigned to the case, she could request EEOC to perform a substan­tial weight review of the dismissal.  Petitioner's claim had been assigned EEOC No. 21B961513.  The record does not indicate whether a substantial weight review was initiated by petitioner.

The investigative report found the followiong as uncon­

test­ed facts:  petitioner (a) was hired on June 20, 1995, as a bookkeep­er/secretary; (b) worked with Brown and Hudgins on a daily basis; (c) met with Batley in November 1995 to discuss her job perfor­mance; (d) received a 75¢-per-hour raise in November 1995; and (e) was discharged on January 18, 1996.  With regard to sexual harassment, substantial evidence was found for the following reasons:

"1. Complainant refers to incidents in which members of management made comments of a sexual nature of which Complainant con­

sidered to be offensive.  That Complain­

ant worked in this office environment and found it difficult to perform her duties.  That such comments continued throughout Complainant's employment.

2. That Complainant reported to management that she wanted the comments and behavior stopped.  That she also objected to such behavior verbally, but the comments and behavior continued despite her objections.  That Respondent failed to take the appropriate action necessary to pro­

vide an environment free of sexual ha­

rassment."

With regard to harassment based on sex, substantial evidence was found because:

"1. The evidence shows that during Complain­

ant's employment certain things were done to her that may be construed as harass­

ment.  Listening to telephone conversa­

tions, asking questions of a personal nature and going through one's personal effect [
sic
] are not part of a daily busi­ness plan.

2. That these incidents plus others, made it difficult for Complainant to perform her job.

3. Respondent is obligated to provide a harassment[-]free work environment for its employees.  Despite complaints being made nothing was done to provide this for Complainant."

With regard to the charge of discharge based on sex, petitioner alleged she was female, had performed her duties in a satisfactory manner, was discharged on January 18, 1996, and no male employees were discharged then.  In defense, Andrew Wagner, manager, stated petitioner was discharged for poor job performance.  She was told at the November 6, 1995, meeting that she needed to improve and indicated that she would improve, but the situation got worse.  During the year of and the year prior to the alleged violation, no one else was discharged by respondent employer.

Petitioner told the investigator her evaluation was due in October 1995, but she never got it.  Batley asked her how things were going and she told him of the problem she was having with Hudgins.  Batley told her he would take care of it and advised her to get up front and greet the customers, which she tried to do.  When she met with Brown, Wagner, and Batley in November 1995, they discussed how to improve communications and what plaintiff was expected to do.  On December 15, 1995, she received a 75¢-per-hour raise, she was advised to keep up the good work, and Batley said she had done a good job.  On January 18, 1996, Batley and Wagner informed her it was not working out and she was being let go.  Wagner indicated, "her relationship could not be restored."  Petitioner felt her sex was a factor in her poor treatment.

Batley informed the investigator that petitioner was given a raise in 1995 because she completed the probationary period and it was part of the employment agreement.  He also stated that customers' complaints began in late December 1995.  Plaintiff had not completed prepayment forms properly, was not greeting custom­

ers, was not servicing clientele, and had spent time on personal business and calls rather than company business.  These were some of the reasons she was let go.

The investigator recommended a finding of lack of substantial evidence because (1) petitioner was advised of the concerns and suggested improvements, but a short time later another series of problems occurred complicating the matter so that petitioner continued to have problems performing her job; (2) petitioner failed to do what respondent informed her she needed to do to improve her performance; and (3) respondent provided a legitimate nondiscriminatory reason for its dismissal of petition­

er.

With regard to the charge of discharge for retaliation, the investigator noted plaintiff alleged sexual harassment by Brown and Hudgins, about which she complained on about November 8, 1995.  The discharge on January 18, 1996, was within a short period of time following the protected activity of complaining about sexual harassment.  As to the defense, the investigator referred to Wagner's stating plaintiff was discharged for poor performance; the meeting on November 6, 1996, concerning plaintiff's need to improve; and his denial that petitioner was retaliated against in any way.

In addition to what the investigator referred to regarding the other discharge count, the findings also indicated plaintiff stated she believed she was retaliated against for having reported the sexual harassment.  She said she was doing a good job, Batley told her she was doing a good job, and she had recently received a raise.  Wagner informed her the relationship was not working out, but he could not give a specific reason why she was let go. She told Batley and Wagner it was due to sexual harassment.  They indicated to her that they felt she could not handle the busy season, but she was not given a chance to do so.

The investigator's report again referred to respondent's concerns and problems and petitioner's failure to improve.  Batley had said petitioner was not retaliated against in any way and that the problems were brought to her attention, but it did no good.

The investigator recommended a finding of lack of substantial evidence for the same reasons relied on as to the other discharge allegation, noting respondent had shown that petitioner's perfor­mance was the reason for her dismissal and there was no retaliatory intent by respondent.

On review, the Chief Counsel sustained the dismissal of the two discharge counts.  After reviewing the evidence and allegations of the parties, the order of the Chief Counsel con­

cluded:

"10.  Complainant does not provide, and the investigation does not reveal, any evidence which would suggest that Respondent discharged Complainant because of her sex or in retalia­

tion for opposing unlawful discrimination.

11.  In the final analysis, Complainant fails to establish that Respondent's actions were motivated by Complainant's sex, female, or in retaliation for opposing unlawful discrimina­

tion.  Rather, the evidence reveals that Complainant was discharged for continu­ous poor work performance."

In analyzing employment discrimination actions brought under the Act, a three-part analysis is utilized.

"First, plaintiff must establish by a prepon­

derance of the evidence a 
prima
 
facie
 case of unlawful discrimination.  If a 
prima
 
facie
 case is established, a rebuttable presumption arises that the employer unlawfully discrimi­nated against plaintiff.  Second, to rebut the presumption, the employer must articulate, not prove [citation], a legitimate, nondiscrimina­

tory reason for its decision.

Finally, if the employer carries its burden of production, the presumption of unlawful discrimination falls and plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was in­

stead a pretext for unlawful discrimination.  This merges with plaintiff's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against plaintiff.  [Citation.]  This ultimate burden remains at all times with plaintiff.  [Cita­

tion.]"  
Zaderaka v. Illinois Human Rights Comm'n
, 131 Ill. 2d 172, 178-79, 545 N.E.2d 684, 687 (1989).

Plaintiff argues that, based on 
Whipple v. Department of Rehabilitation Services
, 269 Ill. App. 3d 554, 556-57, 646 N.E.2d 275, 277 (1995), the Department and Chief Counsel could not reach the second and third prongs of the analysis.  In 
Whipple
, this court concluded that a decision to dismiss a charge "after only investi­gation by the Department must be based upon the insufficien­

cy of a 
prima
 
facie
 case."  
Whipple
, 269 Ill. App. 3d at 556-57, 646 N.E.2d at 277.  According to 
Whipple
, going into the second and third prongs would inherent­ly bring into play a balancing of evidence.  
Whipple
, 269 Ill. App. 3d at 557, 646 N.E.2d at 277.

Although deciding that there was not sufficient evidence to establish a 
prima
 
facie
 case, the court in 
Zunino v. Cook County Comm'n on Human Rights
, 289 Ill. App. 3d 133, 137-38, 682 N.E.2d 178, 181-82 (1997), noted a conflict of authority on whether only the first prong of the analysis could be considered at this stage.  In 
Alcequeire v. Human Rights Comm'n
, 292 Ill. App. 3d 515, 685 N.E.2d 974 (1997), the court disagreed with 
Whipple
 and said that the consider­ation of a dismissal of a charge for lack of substan­

tial evidence need not be restricted to the 
prima
 
facie
 prong.   
Alcequeire
, 292 Ill. App. 3d at 520, 685 N.E.2d at 977.

After reconsidering the 
Whipple
 decision, we conclude it no longer correctly states the law.  Section 7-102(D) of the Act has been amended since 
Whipple
 was decided.  The amended statute allows the Depart­ment to make findings of fact and conclusions on all material issues, including credibility.  Compare 775 ILCS 5/7A-

102(D), 8-103 (West 1996), with Ill. Rev. Stat. 1991, ch. 68, pars. 7A-102(D), 8-103.  The consideration of the denial of a charge of lack of substantial evidence need not be restricted to the 
prima
 
facie
 prong.  
Alcequeire
, 292 Ill. App. 3d at 520, 685 N.E.2d at 977.

Petitioner contends the dismissal of the claims re­lating to discharge from employment vio­lated her right to due process under the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2).  This argument is an alternative method of raising the question of whether the analysis employed in 
Whipple
 (Department cannot consider anything but whether a 
prima
 
facie
 case is alleged at this stage) is appropri­

ate.

Due process applies to administrative proceedings.  
Anderson v. McHenry Township
, 289 Ill. App. 3d 830, 832, 682 N.E.2d 1133, 1135 (1997) (opinion modified on denial of rehearing).  However, the concept of due process is flexible, requiring only such procedural protections as fundamental principles of justice and the particular situation demand.  Due process required for an administrative proceeding does not require a proceeding in the nature of a judicial proceeding.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 92, 606 N.E.2d 1111, 1119 (1992); 
Sindermann v. Civil Service Comm'n of the Village of Gurnee
, 275 Ill. App. 3d 917, 923, 657 N.E.2d 41, 46 (1995).

After a charge is filed, the Department conducts a full investigation into the allegation.  775 ILCS 5/7A-102(C) (West 1996).  As part of the investigation, and after reasonable notice to the parties, the Department may conduct a fact-finding confer­

ence.  775 ILCS 5/7A-102(C)(4) (West 1996).  The purpose of the conference is to obtain evidence, identify issues in dispute, ascertain the positions of the parties, and explore the possibility of reaching a negotiated settlement.  
Jabbari v. Human Rights Comm'n
, 173 Ill. App. 3d 227, 231, 527 N.E.2d 480, 482 (1988).  The Act authorizes the dismissal of a charge based on a determination of no substantial evidence.  775 ILCS 5/7A-102(D)(2)(a) (West 1996).  The Director of the Department reviews the investigative report to determine if there is enough evidence to justify the filing of the complaint.  

"(1) Each charge shall be the subject of a report to the Director.  The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Direc­

tor shall determine whether there is substan­tial evidence that the alleged civil rights violation has been committed.  The determina­

tion of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and in­

cludes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues and questions of credibility.  Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance."  775 ILCS 5/7A-102(D)(1), (D)(2) (West 1996).

Until a complaint is issued by the Department, the proceedings are investigatory (determining whether the charge should be brought) and not adjudicatory (determining whether the charge has been proved).  The Act gives those separate functions to separate agencies, the Department and the Human Rights Commission.  The Department's dismissal of the charge for lack of substantial evidence occurs at the investigatory stage.  
Jabbari
, 173 Ill. App. 3d at 232-33, 527 N.E.2d at 483.

Relying on 
Hannah v. Larche
, 363 U.S. 420, 442-43, 4 L. Ed. 2d 1307, 1321-22, 80 S. Ct. 1502, 1514-15 (1960), the court in 
Jabbari
 determined that the full panoply of judicial procedures does not apply to the fact-finding investigation, including rights to discovery, confrontation, cross-examination, and other elements of due process involved in judicial and quasi-judicial proceedings.  
Jabbari
, 173 Ill. App. 3d at 233, 527 N.E.2d at 483-84.  The petition­er is procedurally protected at the investigatory stage by the requirement that the investigators file a report with the Depart­ment Director (775 ILCS 5/7A-102(D)(1) (West 1996)), the right to request review of the dismissal by the Chief Counsel (775 ILCS 5/7A-102(D)(2)(a) (West 1996)), and ultimately the right to judicial review.  As noted in 
Jabbari
, the fact the Act contem­

plates conciliation (775 ILCS 5/7A-102(E) (West 1996)) is a clear indication of legislative intent that the investigatory stage was not to be adversarial.  The 
Jabbari
 court found no violation of due process in the investigatory process.  
Jabbari
, 173 Ill. App. 3d at 234, 527 N.E.2d at 484.  See also 
Gayle v. Human Rights Comm'n
, 218 Ill. App. 3d 109, 114, 578 N.E.2d 144, 148 (1991).

The demands for due process are proportional to the weight of the interest being protected balanced against the countervailing interests of society so that, if after balancing these interests, the state's exercise of power is deemed to be reasonable, the legislation will be upheld.  
Rios v. Jones
, 63 Ill. 2d 488, 497, 348 N.E.2d 825, 829 (1976).  The State of Illinois has a legiti­mate and significant interest in providing a simple, nonadversarial procedure for determining the merit of a claim made under the Act.  
Gayle
, 218 Ill. App. 3d at 114, 578 N.E.2d at 148.

Petitioner in this case argues that the Department should not be allowed to make a determination of credibility of witnesses or choose between conflicting versions of the incidents during the investigatory process.  We disagree.  Section 7A-102(D)(2) speci-

fically grants the Department that authority.  Additionally, there is no evidentia­ry dispute as to the reason for petitioner being discharged from her job.  She was fired for poor performance.  Whether the poor performance resulted from sexual harassment is the subject of pending charges.  A due process violation has not been demon­strated.

On the merits, this court's review is limited to determin­ing whether the decision to dismiss the charges was arbitrary or capricious or amounted to an abuse of discretion.  
Alcequeire
, 292 Ill. App. 3d at 519-20, 685 N.E.2d at 976; 
Motley v. Human Rights Comm'n
, 263 Ill. App. 3d 367, 371, 636 N.E.2d 100, 102 (1994).

On appeal, petitioner does not ardently contest the Chief Counsel's finding that she was not fired because she was a female.  There is no evidence petitioner was terminated because she was a woman.  That portion of the Chief Counsel's order can be summarily affirmed.

Petitioner argues that the Chief Counsel should have consid­ered the definition of sexual harassment in the Act when determin­ing if she was fired in retaliation for complaining about sexual harass­ment.  Petitioner specifically refers to the statutory definition of sexual harassment as including "any conduct of a sexual nature when *** such conduct has the purpose or effect of substan­tially interfering with an individual's work performance."  775 ILCS 5/2-101(E)(3) (West 1996).  The Department's investigative report found sufficient substantial evidence of sexual harassment after noting that there was evidence of incidents of sexual harassment rendering it difficult for petitioner to perform her job duties. Petitioner argues that, since she was fired for failing to do her job, the Chief Counsel should have consid­ered the sexual harassment in determining whether dismissal of the discharge count was appropri­ate.

First, in violation of Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)), petitioner has cited no legal authority that supports the argument that the Chief Counsel should have considered the statutory definition of sexual harassment when determining the propriety of dismissing the discharge counts.  Second, the argument admits she was fired for poor job performance, not for her gender or in retaliation for her complaints about sexual harassment, and that sexual harassment charges remain pending.  Nevertheless, it concludes petitioner must have been fired in retaliation for her complaints because her job performance suffered as a result of the sexual harassment.  We disagree.  The nature of the charges is distinctly different, and the fact petitioner may have suffered sexual harassment does not establish that she was terminated in retaliation for complaining about the sexual harassment.  More­over, the logical conclu­sion of her argument is that, if the termina­tion was unlawful, it was a continuation of or an effect of the alleged sexual harass­ment, which claims remain pending.  The Chief Counsel and Depart­ment concede that, if sexual harassment is proved, petitioner will be entitled to recover for whatever damages resulted from her termination.  They refer to 
Board of Directors, Green Hills Country Club v. Human Rights Comm'n
, 162 Ill. App. 3d 216, 221, 514 N.E.2d 1227, 1231 (1987), upholding orders awarding damages and directing reinstate­ment of the employees who were constructively discharged (
i.e.
, forced to quit) due to sexual harassment.

At oral argument, the parties were allowed to cite additional authority.  Because this case deals with issues concern­

ing claims of discrimi­nation based on discharge for gender and discharge for retaliation and because the sexual harassment claims remain pending, the recent decisions of 
Burlington Industries, Inc. v. Ellerth
, 524 U.S. ___, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) and 
Faragher v. City of Boca Raton
, 524 U.S. ___, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998), have no relevance to this case.  These cases deal with an employer's vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) au­thority over the employee under title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. §2000e 
et
 
seq
. (1994)).  These cases discuss when an affirma­tive defense is available to an employer.  Unlike Title VII, under which employers are not always automatically liable for sexual harass­ment, in Illinois the Act imposes strict liability on the employer regardless of whether the employer knew of the offending conduct.  
Geise v. Phoenix Co. of Chicago, Inc.
, 159 Ill. 2d 507, 518, 639 N.E.2d 1273, 1277 (1994).  In addition, the issues discussed in 
Traficano v. Department of Human Rights
, 297 Ill. App. 3d ___, 697 N.E.2d 372 (1998), are dissimi­lar to those raised in this case.

The decision of the chief legal counsel of the Department is affirmed.

Affirmed.

COOK and GREEN, JJ., concur.