Ricky COOPER, et al., etc., Plaintiffs,

v.

Rose Mary BOMBELA, Director, Illinois Department of Human Rights, Defendant.

No. 98 C 2930.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 29, 1999.

Randall D. Schmidt of Edwin F. Mandel, Legal Aid Clinic, Chicago, IL, for plaintiffs.

Thomas A. Ioppolo, Assistant Attorney General, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This class action (the plaintiff class having been certified on November 5, 1998) arises from recent changes in the procedures used by the Illinois Department of Human Rights ("Department") to evaluate discrimination claims. Class representatives Ricky Cooper, Anna Marie Klups and Chitunda Tillman (because their claims are identical except in one immaterial respect, for simplicity this opinion will most frequently speak of the entire class by personifying it only in terms of "Cooper") assert 42 U.S.C. § 1983 ("Section 1983") claims that four of those procedural changes result in an administrative process that violates Cooper's (meaning the class') Fourteenth Amendment procedural due process rights. At the threshold Cooper seeks entry of a preliminary injunction preventing Department Director Rose Mary Bombela ("Bombela") from continuing to rely on three of those procedural changes. For the reasons set forth in this memorandum opinion

and order, that motion is granted to the extent stated in the *Conclusion* section.[1]

### Department's Procedures

Under the Illinois Human Rights Act ("Act," 775 ILCS 5/1 to 5/10 [2]) any employee who believes that he or she has been discriminated against in his or her employment is provided with an administrative process to enforce the right to be free from such discrimination (*Baker v. Miller*, 159 Ill.2d 249, 266, 201 Ill.Dec. 119, 636 N.E.2d 551, 559 (1994)). First the complainant files a Charge of Discrimination with Department (Act § 7A–102(A)(1)). Once that charge has been filed, Department must serve the employer and commence a full investigation of the allegations (Act § 7A–102(B) and (C)). Although the investigation is informal, the investigator has the right to subpoena witnesses and documents (Act § 7A–102(C)(2)).

As part of its investigation, Department generally convenes a fact-finding conference to obtain evidence, identify the issues in dispute, ascertain the positions of the parties and explore the possibility of a negotiated settlement (Act § 7A–102(C)(4); 56 Ill.Admin.Code § 2520.440). That conference may not be recorded (56 Ill.Admin.Code § 2520.440(c)), but the parties and the investigator are permitted to take notes. In addition, the investigator may choose to exclude witnesses. While the parties do not question witnesses directly, they may ask the investigator to ask specific questions (*id.*).

Once the investigation is complete, the investigator submits a written report to Department's Director (Act § 7A–102(D)). Based on that report, the Director determines whether there is "substantial evidence" that a civil rights violation has been committed (Act § 7A–102(D)(2)):

> Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance.

Effective January 1, 1996 the statute was amended to allow the Director to take credibility into account in assessing whether substantial evidence exists (*id.; Webb v. Lustig*, 298 Ill.App.3d 695, 702, 233 Ill.Dec. 119, 700 N.E.2d 220, 224 (4th Dist.1998)).[3]

■ If the Director finds substantial evidence of a violation, Department attempts to conciliate the charge. If that attempt does not succeed, a Department attorney drafts and files a formal complaint with the Illinois Human Rights Commission ("Commission"), where the claim is adjudicated before an Administrative Law Judge in a formal hearing with counsel representing each party and with the right to engage in motion practice, discovery and cross-examination.

If the Director finds no substantial evidence and therefore recommends dismissal of the charge, the complainant may file a Request for Review (Act § 7–101.1). For charges filed before January 1, 1996 that

---

1. Almost invariably this Court deals with motions for preliminary injunctions through the issuance of findings of fact and conclusions of law in separate sections containing numbered paragraphs (though with the hedge that anything labeled a finding that partakes of a legal determination is also to be considered a conclusion, while anything labeled a conclusion that partakes of a factual determination is also to be considered a finding—see *Miller v. Fenton*, 474 U.S. 104, 113–14, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). But in this instance that form of adherence to Fed.R.Civ.P. ("Rule") 52(a) would be both unnecessary and awkward, because the parties have no quarrel as to the facts and because the purely legal questions on which they do battle better lend themselves to the type of analytical discussion ordinarily found in summary judgment opinions. Accordingly this memorandum opinion and order is intended to satisfy the requirements of Rule 52(a).

2. Further citations to the Act will take the form "Act § —," employing the Act's internal numbering and hence omitting "775 ILCS 5/" as unnecessary to be repeated.

3. Before that amendment the statute did not specifically address whether the Director could or should consider credibility as a factor in the substantial evidence determination. According to a Department policy guide quoted in *Lemon v. Tucker*, 695 F.Supp. 963, 972 (N.D.Ill.1988), *aff'd sub nom. Luckett v. Jett*, 966 F.2d 209 (7th Cir.1992), and to *Lemon's* description of the prior Department procedures (*id.* at 972–73), if at that time a charge turned on witness credibility the investigator did not resolve that question, instead deferring the ultimate decision to the Commission hearing referred to in the next paragraph of the text.

Request for Review has been decided by the Commission (Act § 8–103), while for charges filed thereafter the Request is decided by Department's Chief Legal Counsel (Act § 7–101.1).

Until December 29, 1997 Department rules allowed complainants preparing Requests for Review to inspect materials obtained by Department during its investigation (2 Ill.Admin.Code § 926.210 (1995); Complaint and Amended Answer ¶ 46). As of that date, however, a new regulation went into effect barring access to all investigative materials except the formal report submitted to the Director until after the case is completely disposed of, such as by a final dismissal after a Request for Review (2 Ill.Adm.Code § 926.210 (1997)).[4] Such decisions are reviewable in the state Appellate Courts (Act § 8–111).

Cooper seeks to enjoin Department from implementing three changes in its process: (1) allowing its *investigators* to make credibility determinations (with claimants having no right to confront and cross-examine adverse witnesses in the investigator's proceedings); and then, at the Request for Review stage, (2) denying claimants access to investigative files and (3) denying claimants access to witness statements. In the interim, the current preliminary injunction motion urges this Court to require Department to return to its prior procedures until the constitutionality of the new policies can be fully examined.

### Younger Abstention

Bombela first responds to Cooper's preliminary injunction motion by urging abstention from assessing the motion on the merits. For that purpose Bombela looks to the principles set forth in *Younger v. Harris*, 401

U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), initially in the context of pending state court criminal proceedings. Post–*Younger* the Supreme Court has extended its abstention doctrine to both state civil proceedings (see, e.g., *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)) and state administrative proceedings that are judicial in nature (see, e.g., *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).[5] But it has not done so without limits, and this case falls outside of the boundaries of appropriate application of the *Younger* doctrine.

■ *Younger* abstention is grounded in the premise that federal courts should not interfere with a state's effort to enforce its own laws in an ongoing state proceeding in which the state defendant can fully and fairly litigate the issue it would instead attempt to raise in federal court. Typically *Younger* abstention applies when a state defendant who could have raised a federal defense to a state judicial proceeding instead files suit in federal court against the state actor pursuing the state enforcement action. Hence the parties in the state action are in an inverse relationship to the parties in the federal action: Whoever is the state defendant becomes the federal plaintiff, and whoever is the state plaintiff becomes the federal defendant. That is not this case, and therein lies the problem with Bombela's argument.[6]

In an earlier opinion in *Lemon v. Tucker*, 664 F.Supp. 1143, 1147 (N.D.Ill.1987), a case very similar to this one also involving a federal court challenge to the constitutionality of previous Department procedures, then Judge Susan Getzendanner provided an extended and insightful—and this Court thinks cor-

---

**4.** Indeed, Department informally changed its policy regarding file access well before the new regulation went into effect (Complaint and Amended Answer ¶ 47).

**5.** For a detailed analysis of the Supreme Court cases that have expanded the *Younger* abstention doctrine, see Erwin Chemerinsky, *Federal Jurisdiction* 715–37 (2d ed.1994).

**6.** That inverse relationship is a virtual requirement of *Younger* abstention. As *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir.1995) has said:

[A]bstention under *Younger*'s designed to prevent interference with proceedings presenting important issues of state policy or power—either direct (as by enjoining their continuation) or indirect (as by deciding an issue before the state tribunal) and, under the law of preclusion, preempting the state's consideration of the question.
We could not find any case applying the *Younger* principle to two suits filed by the same party.

rect—analysis of the *Younger* doctrine in the present context:

> The central feature to every *Younger* case is still not present here. The federal plaintiffs in this case are not defendants in the state action. They therefore cannot raise their federal claims by way of defense in the state proceedings. Defendant argues that the plaintiffs here are indeed parties to a state administrative proceeding in which they can obtain all the relief they are seeking here. But that pending administrative proceeding is not an action brought by a state actor against plaintiffs to enforce important state policies. It is brought by the same plaintiffs to this action—private employees who believe they have been discriminated against. True, in that state proceeding the plaintiffs argue not only that they have been discriminated against, but also that the procedures for processing their discrimination claims violate due process. That is the same claim raised here. But unlike every other *Younger* case, the relationship of the parties to this federal action is not an inversion of their relationship in the related state action. The relationship is the same. This is not a mere technical aberration. It means that the fundamental concern of *Younger* is absent here. As already explained, the basic principle of *Younger* is that a federal court should not interfere with a state's interest in enforcing its own laws when the party defending the state enforcement proceeding can obtain all the relief he desires by raising his federal claim as a state defense. But where, as here, the state is not prosecuting any of its laws, and the federal plaintiffs are not state defendants but are in fact the state plaintiffs, the *Younger* policy of non-interference with state prosecutions is inapplicable.

Indeed, to hold otherwise would flout the Supreme Court's longstanding teaching (see *Patsy v. Florida Board of Regents,* 457 U.S. 496, 502, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)) that there is no exhaustion requirement for Section 1983 claims (*Lemon,* 664 F.Supp. at 1147):

> Thus, defendant's request for abstention is really based on the argument that since the plaintiffs can obtain their desired relief by raising their federal claims as state plaintiffs, this court should remit the plaintiffs to that forum. But, if this court were to abstain in this case merely because the state plaintiffs can raise their federal claims in state administrative proceedings, then the result would essentially be a requirement that a federal plaintiff exhaust his constitutional claims in a state forum before resorting to a federal forum. The Supreme Court in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), has explicitly held that such a view would be contrary to law.

That rule of nonexhaustion is precisely why the Supreme Court, when it extended *Younger* abstention to state administrative proceedings, required that those proceedings be coercive rather than remedial in nature (see *Dayton Christian Schools,* 477 U.S. at 627–28 n. 2, 106 S.Ct. 2718).[7] In *Dayton Christian Schools* the Court applied *Younger* because the state had already initiated a state proceeding to enforce state law, a coercive process. By contrast, here the federal plaintiffs have earlier brought a remedial action in state administrative proceedings to vindicate their own state law rights. This Court is not about to impose a requirement of exhaustion of their *federal constitutional* claims in the face of the uniform Section 1983 jurisprudence that rejects such a requirement. *Younger* abstention does not apply to this case.

### Merits of the Preliminary Injunction Motion

■ To resolve the merits of Cooper's motion, this Court must determine whether the entry of a preliminary injunction is appropriate at this early stage of the proceedings. This Court's exercise of its discretion to that end requires Cooper to satisfy each of the standards identified in *Roland Machinery*

---

7. For similar resolutions of the tension between *Dayton Christian Schools* and *Patsy,* see also *O'Neill v. City of Philadelphia,* 32 F.3d 785, 791

n. 13 (3d Cir.1994) and *Kercado–Melendez v. Aponte–Roque,* 829 F.2d 255, 260 (1st Cir.1987).

*Co. v. Dresser Industries, Inc.,* 749 F.2d 380 (7th Cir.1984): [8]

    1. a likelihood of success on the merits;

    2. the inadequacy of any remedy at law;

    3. irreparable harm to Cooper (and the represented class) if the preliminary injunction were to be denied;

    4. the balancing of that harm if preliminary injunctive relief were wrongfully denied against the harm to Bombela if such preliminary relief were wrongfully granted; and

    5. the absence of disservice to the public interest if the preliminary injunction is granted.

This opinion addresses those standards in turn.

*Likelihood of Success*

In light of the "sliding scale" hurdle that a preliminary injunction plaintiff must also overcome (*Roland Machinery,* 749 F.2d at 387–88), the plaintiff's required probability of success has understandably been framed in undemanding terms. That calls for determining whether Cooper's procedural due process argument has "a better than negligible chance of succeeding on the merits" (*Boucher v. School Bd. of the Sch. Dist. of Greenfield,* 134 F.3d 821, 824 (7th Cir.1998) (citations omitted)).

■ Procedural due process analyses involve two steps: identifying an underlying property right and assessing what process is due to protect that right (*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). To start with, Cooper has a property interest in the underlying claim of discrimination. In evaluating the predecessor statute to Illinois' Human Rights Act, *Logan,* 455 U.S. at 428–33, 102 S.Ct. 1148 held that a cause of action—a claim such as those at issue here—is a form of property protected by the Due Process Clause (see also two decisions finding such a

property interest in the right to file a claim under the Act when plaintiff alleged that Department processes were inadequate: *Lemon,* 695 F.Supp. at 967–68 and *Jabbari v. Illinois Human Rights Comm'n,* 173 Ill. App.3d 227, 232, 123 Ill.Dec. 17, 527 N.E.2d 480, 483 (1st Dist.1988)).

What process is due for the protection of such a property interest—a cause of action or claim? To be sure, claimants such as Cooper may not have the right to full trial-like procedures at Department's preliminary investigative stage (see *Webb,* 298 Ill.App.3d at 703, 233 Ill.Dec. 119, 700 N.E.2d at 225). If a claimant passes muster at that investigative stage, he or she receives such a formal adjudication at the Commission—and as Bombela points out, it makes no sense to hold a formal hearing to determine whether to hold a formal hearing.

■ It takes only a moment's thought, however, to see the fallacy in using that last point as the basis for rejecting Cooper's claim—a fallacy demonstrated by the "if" clause with which the last sentence begins. In that respect it is no accident that the definitive caselaw teaches that even at a preliminary investigative stage that may result in the loss of a property interest, complainants have the right to core procedural due process requirements—notice and an opportunity to be heard—in an appropriately informal form (*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Here the question is whether the class is likely to succeed with its argument that due process requires a claimant's access to investigative files and witness statements when preparing Requests for Review, and also requires the reservation of credibility determinations for the Director rather than the investigator.

Cooper first contends that denying claimants access to investigative files and notes about witness statements while they prepare for their administrative appeal violates due process.[9] This Court finds that Cooper has

---

8. Even though our Court of Appeals has had frequent occasion to rehearse and apply the preliminary injunction criteria in numerous cases since *Roland Machinery,* this Court continues to

regard the exposition in that case as the best articulation of those criteria and their rationale.

9. Although Cooper's request for injunctive relief does not expressly ask for access to witness state-

at least met the threshold "likelihood of success" standard on that score. *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487 holds that an opportunity to respond to evidence is a basic component of procedural due process. If claimants do not have access to their investigative files while preparing Requests for Review, it is difficult to see how they can have a meaningful opportunity to respond to the record against them before their charges are dismissed from the administrative process altogether. Although Bombela does provide such claimants with their Investigative Reports, those Reports are only as detailed and as informative as particular investigators may choose to make them. Given the fact that any sensitive materials can be removed from the investigative files in accordance with the exceptions to disclosure in the pre–1997 regulation (2 Ill.Admin.Code § 926.210), Department bears little if any burden in providing access to investigative files before rather than after claimants make their Requests for Review. It goes without saying that claimants who can fully examine (and can hence respond to) what the investigator considers to be the evidence against them are likely to have a better chance of prevailing on administrative appeal. In sum, Cooper has shown the requisite "likelihood of success" with regard to those aspects of his request for preliminary injunctive relief.

Cooper further urges that allowing investigators to use credibility determinations as the basis for their recommendations to the Director denies claimants due process.[10] That argument is grounded in the idea that credibility determinations should be made only with certain procedural safeguards in place in the interests of accuracy. According to *Lemon,* 695 F.Supp. at 972, a prior Department policy guide acknowledged that issues of credibility should be resolved only after a full evidentiary hearing that includes cross-examination, and accordingly it forbade credibility determinations at the investigative stage. *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 266, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) has also recognized (albeit in a different context) that credibility determinations should not be made without appropriate procedural safeguards:

> [T]he primary function of the investigator is not to make credibility determinations, but rather to determine simply whether reasonable cause exists to believe that the employee has been discharged for engaging in protected conduct. Ensuring the employer a meaningful opportunity to respond to the employee's complaint and supporting evidence maintains the principal focus on the employee's conduct and the employer's reason for his discharge. Final assessments of the credibility of supporting witnesses are appropriately reserved for the administrative law judge, before whom an opportunity for complete cross-examination of opposing witnesses is provided.

Under the low threshold ("better than negligible") recently reconfirmed by *Boucher* (following the prescription in *Roland Machinery,* 749 F.2d at 387) for the likelihood of success factor, this Court finds that factor satisfied to the extent described at the outset of this paragraph.[11]

---

ments for the purpose of administrative appeal preparation (as the request does for the investigative files), the Complaint and other submissions make clear that for both types of materials Cooper is asking for access only after a substantial evidence determination has been made, so that a claimant can prepare his or her Request for Review.

**10.** Complaint prayer for relief ¶ D goes farther, urging that the new Illinois statutory provision allowing Director to make credibility determinations (Act § 7A–102(D)(2)) is unconstitutional on the same theory. But because the parties' briefing has focused on the narrower issue whether cross-examination is a constitutionally compelled component of the investigator's hearing arrangements, and because the preliminary injunctive

imposition of a bar against an investigator's making credibility determinations will enable a claimant to raise the issue in a Request for Review if it is the Director who later makes an adverse credibility determination, this opinion adopts the more limited focus described in the text.

**11.** Although Illinois Appellate Courts must accord deference to Department's findings of fact by sustaining them unless they "are contrary to the manifest weight of the evidence" (Act § 8–111(A)(2)), the Act is silent as to whether credibility determinations may permissibly be made by investigators (nor does the Act address what level of deference the Chief Legal Counsel (or for cases filed before January 1, 1996, the Commission) is to give an investigator's findings of fact).

That said, it is important to explain what this opinion does not address. This Court is not holding, at this stage of the case, that due process necessarily requires investigators to employ formal procedural safeguards (most importantly by allowing cross-examination by claimants) in their initial investigations. Nor does this opinion essay to resolve the question whether an adverse decision by Director on credibility grounds after having received an investigator's report (one that is neutral on that score) requires the conferring of a right to cross-examination in conjunction with the claimant's Request for Review. To impose the former obligation would likely involve major administrative burdens, so much so that deferring the issue for future determination makes eminently good sense. And deferring any present consideration of imposing the latter obligation will permit that issue to be examined later in a more informed context, in terms of administrative burdens and otherwise.

*Inadequacy of Remedy at Law, and Irreparable Harm to Plaintiff*

*Roland Machinery,* 749 F.2d at 383 and 386 made the perceptive point—not really recognized in earlier cases and frequently missed in later cases (even in the Court of Appeals)—that the absence of an adequate remedy at law and irreparability of harm are separate factors entering into the granting or denial of preliminary injunctive relief, though there are circumstances in which the two requirements merge (a lawsuit in which the sole remedy sought at trial is an award of damages presents the obvious merger situation, *id.* at 386). Here the action is one in which the ultimate as well as the preliminary relief sought is injunctive in nature, so that the inadequacy of a remedy at law is at the lawsuit's core. And as for the necessary showing of irreparable harm if preliminary relief were to be denied, that requirement is obviously met because even should this Court ultimately decide that current Department procedures violate due process, in all likelihood that decision would not retroactively

apply to reopen old cases. Another opinion in the earlier challenge to Department procedures in *Lemon v. Tucker* held on reconsideration (1989 WL 20832 (N.D.Ill. March 9, 1989)) that despite the existence of constitutional violations, Department did not have to reopen its past cases because that would impose such a substantial administrative burden. *Luckett,* 966 F.2d at 214 approved that decision. That being so, members of the plaintiff class would face irreparable harm if their claims were to be disposed of while Department uses current procedures that are later found to be unconstitutional.

*Balancing of Harms*

With the irreparability of harm to Cooper and the plaintiff class thus having been established if their motion for a preliminary injunction were to be wrongfully denied, the necessary balancing process (*Roland Machinery,* 749 F.2d at 386) calls for an evaluation of the burden that would be borne by Bombela should Cooper's motion be wrongfully granted. In that respect Bombela's primary burden would be the administrative hassle of reverting to its prior policies. That burden is minimal, however, considering the nature of the few practices that Department would have to change.

Turning over the investigative file and witness notes before a claimant makes a Request for Review is simply a change in timing, for under current policy Bombela already allows access to those materials after the Request for Review process is over and a claim has been dismissed. As for the imposition of a prohibition on credibility determinations by her investigators, Bombela has not explained precisely how that change would burden her. Bombela does argue that the right to cross-examination would be overly burdensome at the investigative stage, but that argument overstates the relief Cooper seeks. Once again, although the new Illinois statute confers the ability to make credibility determinations on the *Director,* the relief addressed by this Court in

According to *Roedl v. Midco Int'l,* 296 Ill.App.3d 213, 219, 230 Ill.Dec. 548, 694 N.E.2d 179, 183 (5th Dist.1998), the Chief Legal Counsel must adopt Department's factual findings unless they are against the manifest weight of the evidence.

However, in tracing *Roedl*'s cites for that proposition back several cases, this Court has found that it was based on a now-repealed statutory provision. Accordingly this opinion does not rely on *Roedl.*

likelihood-of-success terms simply requires *investigators* to refrain from making such credibility determinations in their reports and recommendations. Because investigators have in the recent past refrained from relying on credibility in making their recommendations as to the existence or nonexistence of substantial evidence (apparently without overwhelming the Commission with vast numbers of cases), nothing suggests that it would be unduly burdensome for Bombela to return to that policy.

In summary, Cooper and the plaintiff class face potentially great harm—the erroneous dismissals of their discrimination claims—without the preliminary injunction now under consideration, while Bombela's burden in reverting to previous policies is slight. Hence the required balancing of harms tips the scales heavily in favor of the granting of such preliminary injunctive relief.

*Public Interest*

This Court's final inquiry is whether granting the preliminary injunction would not result in any disservice to the public interest, a factor clarified in *Roland Machinery,* 749 F.2d at 388 as calling for a determination that no others who are not before the court— those other than the immediate parties—will suffer consequences from the granting of interim relief that should be taken into account. No such disservice has been identified by Bombela.

And even in the less precise sense in which "public interest" may be equated with overall societal good as a policy matter, it is plain that providing fair procedures to those who believe that they face discrimination in the workplace is in the "public interest." To be sure, if the initial investigation of such claims by Department were to become too formalistic and adversarial, claimants might be forced to consult attorneys just to bring their charges in the first place (see *Lemon,* 695 F.Supp. at 968–69). Those who could not afford attorneys or who did not have the resources equivalent to those of their employers would be at a disadvantage, something that the Act's administrative scheme was designed to avoid. But as already explained, what is now at issue does not create overly formal or complex procedures at the investigative level, but rather simply returns to the earlier procedures used by Department.

In sum, any fair reading of the "public interest" concept leads to the same conclusion. Granting preliminary injunctive relief will not generate any disservice to the public interest.

*Conclusion*

For the reasons set forth above, Cooper's motion for a preliminary injunction is granted. In particular Bombela is ordered:

1. to provide access to claimants' investigative files, including notes about witness statements, to claimants who are pursuing Requests for Review, but to withhold sensitive materials as outlined in the pre–1997 regulation (2 Ill.Admin.Cod § 926.210); and

2. to preclude her investigators from relying on their assessments of the credibility of witnesses in fashioning their reports and their recommendations as to whether or not there is substantial evidence that discrimination occurred.

This action is set for a status hearing at 9 a.m. February 11, 1999 to discuss further proceedings in the case.