**Steve LUCKETT, individually and as representative of the class of Plaintiffs, Plaintiffs–Appellants,**

v.

**Helen R. JETT,\* individually and in her official capacity as Director of the Illinois Department of Human Rights, Defendant–Appellee.**

No. 89–2529.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1990.

Decided Feb. 4, 1992.

As Amended on Denial of Petition for Rehearing with Suggestion for Rehearing In Banc June 23, 1992.

---

\* After this litigation was commenced Helen R. Jett replaced Joyce E. Tucker as Director of the Illinois Department of Human Rights.

Gary H. Palm, Lori A. Irish, Jeffrey Alperin, Geoffrey Liebmann, Robert S. Ry-

land, Robert R. Cohen, Herbert Bates, Bob-
bitt & Associates, Chicago, Ill., Judy Bach-
man (argued), Mandel Legal Aid Clinic, c/o
Robert R. Cohen, Chicago, Ill., for plaintiff-
appellant.

Jeffrey W. Finke (argued), Rosalyn B.
Kaplan, Asst. Attys. Gen., Chicago, Ill., for
defendant-appellee.

Charles C. Jackson, Jeffrey S. Heller,
Mark A. Weintraub, Seyfarth, Shaw, Fair-
weather & Geraldson, Chicago, Ill., for ami-
cus curiae.

Before CUMMINGS and KANNE,
Circuit Judges, and SNEED, Senior Circuit
Judge.**

KANNE, Circuit Judge.

Plaintiffs brought this class action pur-
suant to 42 U.S.C. § 1983, challenging the
constitutionality of the procedures for pro-
cessing discrimination claims under the Illi-
nois Human Rights Act (IHRA), Ill.Rev.
Stat. ch. 68, §§ 1–101 to 9–102 (1987). Fol-
lowing discovery, both the plaintiffs and
defendant Joyce Tucker, Director of the
Illinois Department of Human Rights
(DHR), filed motions for summary judg-
ment. The district court held that while
the IHRA procedures as originally enacted
did not comport with due process, any such
constitutional deprivations were cured by
the subsequent amendments to the IHRA
passed on September 24, 1987. According-
ly, the court granted the plaintiffs' motion
for summary judgment in favor of those
plaintiffs who had filed claims prior to the
enactment of the IHRA amendments, and
granted Tucker's motion for summary
judgment against all other claimants.

*Lemon v. Tucker*, 695 F.Supp. 963 (NDIL
1988). The court also held that those plain-
tiffs who did not enjoy the benefits of the
IHRA amendments could have their claims
reinvestigated in light of the new proce-
dures, but this conclusion was later vacated
after the court granted Tucker's motion for
reconsideration and determined that such
retroactive relief was inappropriate. The
plaintiffs now appeal from both of the dis-
trict court's rulings in favor of the defen-
dant. For the reasons stated below, we
affirm.

## I.

The history and facts of this litigation
are fully discussed in the district court
opinion, *Lemon*, 695 F.Supp. at 963–967,
and need only brief mention here. The
IHRA was enacted to create a state cause
of action for various civil rights violations
amounting to discrimination based on race,
sex, handicap, religion, age, unfavorable
military discharge, marital status, and oth-
er factors. Ill.Rev.Stat. ch. 68, §§ 1–
102(A). The plaintiffs, certified as a class
on July 16, 1987,[1] brought this suit alleging
that the IHRA procedures used to evaluate
discrimination claims violated their four-
teenth amendment due process and equal
protection rights.[2] After discovery, the
plaintiffs filed a motion for partial sum-
mary judgment on the issue of liability,
claiming that Tucker and the Illinois De-
partment of Human Rights (DHR) deprived
them of due process in two specific ways:
(1) by dismissing their discrimination
charges without allowing them to view the
evidence submitted by a respondent; and

---

** The Honorable Joseph T. Sneed, Senior Circuit
Judge for the Ninth Circuit Court of Appeals,
sitting by designation.

1. The class, as certified by Judge Getzendanner,
included:

> [A]ll persons who currently have charges of
discrimination pending with the Illinois De-
partment of Human Rights ("IDHR") or re-
quests for review pending before the Illinois
Human Rights Commission ("IHRC"). The
class further consists of all persons who will
file charges with the IDHR after commence-

ment of this action (dated June 5, 1984). The
[ ] class does not include those persons whose
charges have been disposed of by a finding of
substantial evidence.

Memorandum Opinion and Order, No. 84 C
4021, slip op. at pp. 1.

2. Specifically, they claimed that the IHRA pro-
cedures were deficient in the following respects:

> (1) Complainants do not have the right to
have an adjudicatory hearing.
> (2) Complainants do not have the right to
know the evidence against them.

(2) by dismissing the discrimination charges which involve credibility determinations without a full evidentiary hearing. Tucker responded by cross-claiming for summary judgment. She argued that the due process standards for the plaintiffs' type of claims were minimal, and that the IHRA procedures—especially those added by the September 24, 1987 amendments—sufficiently protected their due process rights.

In a memorandum decision issued on September 21, 1988, the district court granted in part and denied in part the plaintiffs' motion for summary judgment. The court held that those class members whose claims were subject to the procedures existing before the IHRA was amended had been denied due process, since they were not guaranteed notice of the defenses which employers might raise against their claims or a chance to reply to those defenses; the court therefore determined that these claims should be re-opened and evaluated under the amended IHRA. The court, however, also granted Tucker's motion for summary judgment in its entirety with respect to those claims filed after the enactment of the IHRA amendments. In reaching this conclusion, the court determined that the IHRA amendments cured any alleged due process violations, even though the plaintiffs were not entitled access to all supporting evidence. The court also rejected the plaintiffs' request for evidentiary hearings with the right to cross-examination in matters raising material credibility disputes.

On March 8, 1989, the district court granted Tucker's motion for reconsideration and held that the retroactive relief it had previously authorized was inappropriate under this court's decision in *Sanchez*

(3) Ex parte communications are permitted.
(4) Complainants do not have the right to present all evidence in their favor.
(5) Complainants do not have the right to make or have made a verbatim record of testimony, or to have a decision made solely on the basis of the record.
(6) Complainants do not have the right to compulsory process for the production of witnesses or documents.

*v. Miller*, 792 F.2d 694 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987):

> The court finds the *Sanchez* analysis particularly instructive here. The procedural deprivation found here, although significant, did not so undermine the proceedings that the results of the proceedings completely lack legitimacy. Rather, plaintiffs here were still afforded a full and complete investigation by a department investigator. In contrast, the administrative burden of reopening appropriate cases, whether respondent's or plaintiff's number are used, is substantial. Balanced against the magnitude of the burden, the court finds that the incremental benefit of a new investigation to plaintiffs is not warranted.

This appeal followed.

## II.

We first examine whether the district court correctly concluded that retroactive relief was inappropriate under *Sanchez*. In *Sanchez*, this court held that due process requirements in prison disciplinary proceedings could not be applied retroactively so as to require that all prison records containing determinations of misconduct, not in accord with the adequate procedures, be expunged; we reasoned that the legitimacy of the prison proceedings were not so undermined by the procedural defects that the administrative burden of a retroactive decision could properly be imposed on prison officials. *Sanchez*, 792 F.2d at 701. Here, the plaintiffs contend that the district court committed reversible error by applying the balancing test of *Sanchez*—rather than the general retroactivity analysis of *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)—because its precedential authority is limited to prisoner or

(7) Complainants do not have the right to receive notice of their rights, as required by the due process clause of the fourteenth amendment.
*Lemon*, 695 F.Supp. at 966.

criminal cases. According to the plaintiffs, a sound application of the *Chevron* analysis would have produced a far different outcome than that reached by the district court. The plaintiffs therefore conclude that those claims which were filed between 1981 and 1987 and dismissed without a finding of substantial evidence in their favor should be reopened and reprocessed for a second time by the DHR.[3]

■ We begin our analysis by reviewing the principles enunciated in *Chevron*.[4] In *Chevron*, the Supreme Court fashioned a three-part test to identify situations in which a civil, nonconstitutional precedent should be applied on a prospective basis only: (1) does the decision "establish a new principle of law, either by overruling clear past precedent on which the litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed?"; (2) considering the prior history of the rule in question, its purpose and effect, "does retroactive application "further or retard" the operation of the rule?"; and (3) does retroactive application create "injustice or hardship" for one of the parties? *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355. Since there is a presumption favoring retroactivity in civil cases, all three *Chevron* factors must support prospective application in order to lim-

it the retroactive effect of the decision. *NLRB v. Lyon & Ryan Ford, Inc.*, 647 F.2d 745, 757 (7th Cir.), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981); *Schaefer v. First Nat'l Bank*, 509 F.2d 1287, 1294 (7th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). *But see Austin v. City of Bisbee*, 855 F.2d 1429, 1433 (9th Cir.1988) (all factors need not support prospective application).

■ We have been unable to uncover any authority squarely determining whether *Sanchez's* precedential value is limited to the retroactive effect of expanded procedural protections in prison hearings. However, we need not address this issue, for retroactive relief would be inappropriate here even under the *Chevron* analysis.

First, the district court's decision established a new principle of law which was not clearly foreshadowed by earlier precedent. The plaintiffs have not cited any case— aside from the district court opinion below—which has held that the due process clause mandates that the employer shall submit a verified answer and that the claimant may submit a reply or supplemental reply "at any time." *See* Ill.Rev.Stat. ch. 68, § 7–102(B). Nor can the district court's holding be fairly regarded as "foreshadowed" by prior case law.[5] Quite the

---

3. These claimants, by the plaintiffs' estimate, would include "those whose claims were pending on review in the Human Rights Commission or on appeal in the court of Illinois," and "those whose claims were no longer pending in any State forum."

4. The *Chevron* analysis is still appropriate for this case, notwithstanding the Supreme Court's recent decision in *Beam* As we read the Court's plurality opinion in *Beam*, the test set forth in *Chevron* is still applicable to the initial determination of whether a decision should be applied prospectively, although three Justices indicated they would abandon *Chevron* altogether. But it is error to apply the *Chevron* analysis to decide that a new rule should be applied prospectively if the rule was retroactively applied to the parties in the case in which it was originally announced. *Beam*, 111 S.Ct. at 2446. Writing for the Court in *Beam*, Justice Souter concluded that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all

others who might seek its prospective application." *Id.* at 2448.

5. The Supreme Court has apparently adopted a narrow view of the "clearly foreshadowed" prong in the *Chevron* analysis. In *Florida v. Long*, 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988), the Court ruled that Title VII prohibited gender-based pension benefit payments. In two previous cases, *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) and *Arizona Governing Comm. v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), the Court had ruled that Title VII prohibited certain sex-based pension contribution formulas. Noting that there had been considerable prior speculation as to whether the principles of *Manhart* and *Norris* applied to the issue considered in *Long*, 487 U.S. at 231–32, 108 S.Ct. at 2360, the Court nevertheless refused to grant retroactive relief. In reaching this conclusion, the Court expressly rejected the

contrary, since 1975 Illinois courts have consistently rejected any attempt to expand the procedural requirements beyond those expressly set forth in the IHRA. *See Klein v. FEPC*, 31 Ill.App.3d 473, 334 N.E.2d 370 (1st Dist.1975); *Board of Governors v. Illinois Human Rights Commission*, 109 Ill.App.3d 946, 65 Ill.Dec. 478, 441 N.E.2d 391 (4th Dist.1982); *Castillo v. Human Rights Commission*, 159 Ill.App.3d 158, 111 Ill.Dec. 168, 512 N.E.2d 72 (1st Dist.1987); *Jabbari v. Human Rights Commission*, 173 Ill.App.3d 227, 123 Ill. Dec. 17, 527 N.E.2d 480 (1st Dist.), *appeal denied*, 123 Ill.2d 558, 128 Ill.Dec. 891, 535 N.E.2d 402 (1988).

With respect to the second prong of the *Chevron* analysis—whether retroactive application is necessary to insure compliance with the rule—there is no doubt that retroactivity is not necessary to insure future compliance with due process. Although the district court had found that IHRA's procedures were unconstitutional as they existed before September 1987, the Illinois General Assembly has already amended the IHRA to cure any constitutional defects in DHR discrimination proceedings. Such legislative action should be more than sufficient to protect a claimant's due process rights in the future.

Finally, the significance of the administrative burden which would result by requiring these claims to be reinvestigated cannot be overstated. As the district court recognized, the cost to both the state and employers of locating and processing the claimants would be substantial.[6] For years now, employers have had no duty to preserve any records or other evidence relating these charges. 56 Ill.Admin.Code § 2520.420. Requiring them to defend

themselves now, after so long a period, could scarcely be labelled "equitable." In addition, reprocessing old charges would harm those persons who currently have charges pending, for processing their charges would have to be delayed until the DHR completed reinvestigating the old claims. Unless the already strained DHR were to receive a massive influx in funding—an unlikely prospect, to be sure—the backlog which would be generated by such a burden could prove crippling.

We therefore hold that the district court did not err in refusing to grant retroactive relief to the plaintiffs who were subject to the constitutionally defective IHRA procedures existing before September 24, 1987.

■ We next examine whether the procedures presently authorized by the IHRA comport with due process. The plaintiffs contend that the IHRA procedures are defective primarily because certain adversarial-type processes are not available during the initial investigative stages of discrimination claims, including: the right to cross-examine witnesses at fact-finding conferences; the right to subpoena witnesses and documents; and a prohibition against ex parte communication between the investigator and the charging party or employer. In short, the plaintiffs assert that the due process clause requires that they receive a full hearing at the DHR in order to determine whether they are entitled to an adjudicatory hearing before the Illinois Human Rights Commission.[7] We disagree.

The governing approach for determining what process is due was set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). According to *Mathews*,

pension beneficiaries' contention that the pension plan administrators should have known that this decision was foreshadowed by *Manhart* and *Norris*, since the issue had never been expressly considered or decided in these earlier cases. 487 U.S. at 231–34, 108 S.Ct. at 2359–62.

**6.** Defendant estimates that the cost to the state of locating and reprocessing these claims would be at least $4,028,455.00.

**7.** Once the initial investigation is completed, the DHR prepares a written report which is sent to

the Director of the DHR. After reviewing the report, the Director makes a determination of whether there is substantial evidence that a civil rights violation has occurred. Ill.Rev.Stat. ch. 68, § 7–102(D). If the Director finds substantial evidence of a violation, she designates a DHR attorney to attempt to settle the matter through conference and conciliation. If no settlement is reached, the DHR files a complaint with the Illinois Human Rights Commission. The Commission will then conduct a full evidentiary hearing on the matter.

three factors should be considered when identifying the specific dictates of due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35, 96 S.Ct. at 902–903. *See also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (random termination of property interest in using adjudicatory procedures violated procedural due process); *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (informal procedures for determining whether a foster child may be removed from foster home satisfies due process, assuming a liberty interest was involved); *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (before municipal utility may cut off services to customer, it must afford customer opportunity to meet with an employee authorized to settle billing disputes). The plaintiffs bear the burden of making "the very difficult factual showing necessary" to invalidate administrative procedures on the basis of the foregoing three-prong test. *Walters v. National Association of Radiation Survivors,* 473 U.S. 305, 330, 105 S.Ct. 3180, 3194, 87 L.Ed.2d 220 (1985).

A careful balancing of these competing interests leads this court to conclude that the IHRA procedures, as amended, fully protect the plaintiffs' due process rights. With respect to the first and second prongs of the *Mathews* analysis, we are unable to find any evidence which supports the plaintiffs' assertion that added procedures would better protect their interests by lowering the risk of an erroneous deprivation. In fact, all the available evidence—and common sense—strongly suggest a contrary conclusion. During the fiscal year 1987, claimants before the DHR received substantial evidence finding in 36% of the charges where substantial or lack of substantial evidence findings were made. Those who brought employment discrimination claims in federal court with full due process procedures, by contrast, won between 13–17% of the time when brought against the United States, and between 23–24% of the time when brought against other defendants. Moreover, since most claimants proceed before the DHR *pro se,* they would probably fair worse in a proceeding that included cross-examination, for few if any would possess the legal skills necessary to effectively cross-examine a witness themselves. In our view, the plaintiffs' interests would be better served by maintaining the informal nature of the present investigatory system, rather than injecting formalistic requirements with which only trained advocates could comply.

Not only would the plaintiffs' demands hurt the very people they purport to represent, but implementing such demands would severely compromise the government's interest in maintaining an efficient system for processing discrimination claims. As previously discussed above, the cost of formalizing the current IHRA procedures into an adversarial hearing would be far too onerous for the DHR to bear. According to the DHR's estimates, its budget would have to rise to 314% of its fiscal year 1986 budget level (from $3,545,500 to $11,140,000) in order to accommodate such procedural formalities. Such a burden might generate a chilling effect in the investigative process; employers are far more likely to cooperate in informal investigations where conciliation is typically attempted by the DHR investigator, as opposed to an adversarial setting which places the parties at odds.

Having balanced the interests of the plaintiffs and the government, we conclude that the IHRA procedures are sufficient to meet due process requirements.

### III.

The other contentions that plaintiffs raise on appeal are meritless and do not

warrant discussion. Accordingly, we AF-FIRM the district court's grant of the motion for summary judgment in favor of the defendant, and its determination that retroactive relief is inappropriate.