Ricky COOPER, Anna Marie Klups, Chitunda Tillman, individually and on behalf of all other similarly situated individuals, Plaintiffs–Appellees,

v.

Carlos J. SALAZAR, Director, Illinois Department of Human Rights, Defendant–Appellant.

No. 99–1474.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1999.

Decided Nov. 15, 1999.

Randall D. Schmidt (argued), Mandel Legal Aid Clinic, Chicago, IL, for Plaintiffs–Appellees.

Jan E. Hughes (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant–Appellant.

Before BAUER, FLAUM and DIANE P. Wood, Circuit Judges.

FLAUM, Circuit Judge.

Carlos Salazar, Director of the Illinois Department of Human Rights, appeals the district court's grant of a preliminary injunction forestalling the implementation of two new procedural practices used in the Illinois Human Rights Commission's administrative process for investigating and resolving discrimination claims. For the reasons stated herein, we affirm.

## I. BACKGROUND

In 1980, the Illinois Human Rights Act ("IHRA" or the "Act"), 775 Ill. Comp. Stat. 5/1 *et seq.*, authorized the creation of two administrative agencies: the Department of Human Rights ("IDHR" or the "Department") and the Illinois Human Rights Commission ("IHRC" or the "Commission"). The Act also specified an administrative procedure by which these agencies provide the exclusive avenue for investigation and resolution of discrimination claims under the Illinois Constitution. *See Mein v. Masonite Corp.*, 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312, 315 (Ill.1985) (holding IHRA is "the exclusive source for redress of alleged human rights violations"). Since their inception, the procedures specified by the Act have been amended several times. In 1992, we concluded that the procedures then in use by the IDHR and IHRC to resolve claims under the Act did not violate the Due Process Clause. *Luckett v. Jett*, 966 F.2d 209, 215 (7th Cir.1992), *aff'g Lemon v. Tucker*, 695 F.Supp. 963 (N.D.Ill.1988). Plaintiffs in this case request a return to the procedures we approved in *Luckett*. A brief description of those procedures follows.

Discrimination claims brought under the Illinois Constitution were filed by the claimant with the Department. The De-

**812**

partment informed the respondent of the claim and conducted an informal investigation of the charges. The Department investigator decided which witnesses to contact and what questions to put to them. Witness interviews were often conducted *ex parte*, and parties were not permitted to question witnesses directly, although they could suggest questions to the investigator. As part of the investigation, the investigator usually conducted a fact-finding conference with the parties to gather evidence, identify issues and explore the possibility of settlement. This conference could not be recorded, although the parties and the investigator were allowed to take notes. Upon concluding the investigation, the investigator filed a report on each charge with the Director of the Department (the "Director"). The Director reviewed the report and determined whether there was substantial evidence that a civil rights violation had been committed. If the determination of substantial evidence turned on an issue of credibility, the Director entered a finding of substantial evidence, and credibility issues were resolved at the next stage of the proceedings.

Upon a finding of substantial evidence, further efforts were made to settle the claim. If those efforts failed, the Department filed a complaint with the Commission. A full hearing was conducted before an Administrative Law Judge ("ALJ") who rendered a decision concerning the charge. At this hearing, parties were represented by counsel and procedural safeguards, such as the ability to cross-examine witnesses, were in place.

If the Director found there was no substantial evidence, the charge was dismissed. The claimant had no right to file his own complaint with the IHRC, but he could appeal the dismissal to the Commis-

sion and from there to the Illinois appellate court. At each level of review, the claimant could submit additional materials and argument in favor of his position. In order to prepare these materials, the claimant was given access to the investigation file and witness statements prior to the initial appeal.

In 1996, the Illinois legislature amended the IHRA, changing some of the administrative procedures used to resolve discrimination claims. For our purposes, the significant changes are: 1) the Department's Chief Legal Counsel (the "Counsel"), rather than the Commission, conducts the initial review of dismissals for lack of substantial evidence; 2) credibility determinations are made by the Department during the informal investigation process rather than by an ALJ at a formal Commission hearing; and 3) claimants are allowed access to the full investigation file and witness statements only after the Counsel renders his final decision concerning a dismissal rather than before this initial level of appeal. Other than these changes, the 1996 amendments left the process as it has been described above unchanged.

Plaintiffs brought a class action complaint in the United States District Court for the Northern District of Illinois under 42 U.S.C. § 1983 alleging that these three amendments to the IHRA's procedures violate their procedural due process rights under the Fourteenth Amendment.[1] Plaintiffs petitioned the district court for preliminary injunctive relief from the new credibility determination and file access procedures.[2] The district court certified the class and granted a preliminary injunction against the Department, requiring it

---

1. Plaintiffs brought separate claims for timely access to the full investigation file and for access to related witness statements. Because the due process issues concerning these claims are substantially similar, we treat them as a single claim and refer to them simply as the claim for "file access."

2. Although plaintiffs also claim that the transfer of the initial appeal from the Commission to the Counsel violates their due process rights, they did not seek a preliminary injunction for this claim, and we do not review it at this time.

to return to using its pre–1996 procedures. The Department now appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■■■ Our review of a district court's grant of a preliminary injunction is deferential. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 390 (7th Cir. 1984) ("The question for us is whether the judge exceeded the bounds of permissible choice in the circumstances, not what we would have done if we had been in his shoes."). However, because preliminary injunctions are an unusual remedy requiring the application of a definite set of standards, we subject them to "effective, and not merely perfunctory, appellate review." *Id.* at 389. We review the issuance of the injunction for abuse of discretion and "give substantial deference to the district court's discretionary acts of weighing evidence or balancing equitable factors." *Advent Electronics, Inc. v. Buckman*, 112 F.3d 267, 274 (7th Cir.1997). Within this more general assessment, we review specific findings of fact for clear error and conclusions of law *de novo*. *Id.*

### B. PRELIMINARY INJUNCTION

■■■ A preliminary injunction is an extraordinary remedy that is only granted where there is a clear showing of need. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (" '[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' ") (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948, pp. 129–30 (2d ed.1995)); *see also Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir.1983). Five factors figure into the determination of whether a preliminary injunction should be granted. *See Roland Mach.*, 749 F.2d at 385–88. As a threshold matter, plaintiffs must show 1) a likelihood of success on the

merits, 2) irreparable harm if the preliminary injunction is denied, and 3) the inadequacy of any remedy at law. Once this threshold showing is made, the court balances 4) the harm to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and 5) the impact on persons not directly concerned in the dispute (the "public interest"). *Id.*; *see also Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998).

After applying these five factors to the claims brought by plaintiffs concerning the IHRA's new procedures for making credibility determinations and for the timing of file access, the district court granted a preliminary injunction as to each claim. We now consider the appropriateness of that action.

### 1. Likelihood of Success on the Merits

■■■ Plaintiffs contend that two of the 1996 changes to the administrative procedure for investigating and adjudicating discrimination claims under the Illinois Constitution violate their Fourteenth Amendment procedural due process rights. As an initial matter, plaintiffs must show a likelihood of success on the merits of these claims. The threshold for this showing is low. *See Roland Mach.*, 749 F.2d at 387. Plaintiffs need only demonstrate a "better than negligible chance of succeeding." *Boucher v. School Bd. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998) (citations omitted).

To determine whether the Due Process Clause has been violated, we engage in a two-part analysis. First, we consider whether plaintiffs have been deprived of a liberty or property interest. Then, we determine "what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In answer to the first question, it is undisputed that dismissal of plaintiffs' IHRA discrimination claims is a deprivation of a property

**814**

interest. In *Logan v. Zimmerman Brush Co.*, the Supreme Court held that dismissal of a claim under the Illinois Fair Employment Practices Act, the predecessor to the IHRA, deprives the claimant of "a species of property protected by the Fourteenth Amendment's Due Process Clause." 455 U.S. 422, 428, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Therefore, we need only concern ourselves with the second question: whether the amended IHRA procedures provide sufficient process before that deprivation occurs.

■ Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citations omitted). This is a flexible concept where the requirements "vary with the type of proceeding involved." *Hannah v. Larche*, 363 U.S. 420, 440, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). *See also Logan*, 455 U.S. at 434, 102 S.Ct. 1148; *Mathews*, 424 U.S. at 334, 96 S.Ct. 893. To determine what procedures are required in a given context, we balance three factors: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

As an initial matter, we recognize that plaintiffs' property interest in their discrimination claims is "substantial." *Logan*, 455 U.S. at 434, 102 S.Ct. 1148. We also note that plaintiffs sought, and the district court granted, a preliminary injunction that only requires that the defendant Department return to using its pre-1996 procedures. The record before us does not demonstrate that returning to these procedures would be onerous for the Department, although the Department may be able to show otherwise during the next phase of litigation. Thus, we concentrate our discussion on the risk the new procedures pose of erroneous dismissal of meritorious claims and the value that the requested safeguards would add.

■ The concept of due process generally demands fewer procedural safeguards at informal administrative proceedings than during formal judicial hearings. *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 266, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Hannah*, 363 U.S. at 450–51, 80 S.Ct. 1502. However, there is a procedural floor below which even informal proceedings cannot go. This is especially true where the informal process results in a final dismissal of the plaintiff's claim. *See Brock*, 481 U.S. at 264, 107 S.Ct. 1740 (finding due process minimally requires notice of the substance of allegations and an opportunity to respond); *Logan*, 455 U.S. at 437, 102 S.Ct. 1148 (holding that automatic dismissal of claims where agency failed to take timely action within statutory period violates due process); *Bennett v. Tucker*, 827 F.2d 63, 70 (7th Cir.1987) (finding automatic dismissal of plaintiff's IHRA claim "based on the mere suspicion that it is untimely" violates due process). The question in this case is whether the 1996 amendments to the IHRA administrative procedures carry them below the procedural floor constructed by the Due Process Clause.

**a. Credibility Determinations**

■ Plaintiffs first contend that they were denied an adequate opportunity to be heard before their IHRA claims were dismissed because the IHRA amendments allow credibility determinations to be made at the Department investigation stage where the procedural safeguards of confrontation and cross-examination are not available. Plaintiffs do not suggest that these safeguards must be provided at the investigation stage, but only that credibility determinations should be made at a later stage where these procedures are available.

Due process does not always require the opportunity to confront and cross-examine witnesses in the setting of an informal administrative investigation. For example, due process may not require such procedures when credibility determinations are not made during the initial administrative investigation but are reserved for a later hearing where these safeguards are available. *See Brock*, 481 U.S. at 266, 107 S.Ct. 1740 ("[T]he primary function of the investigator is not to make credibility determinations.... Final assessments of the credibility of supporting witnesses are appropriately reserved for the administrative law judge, before whom an opportunity for complete cross-examination of opposing witnesses is provided."); *Lemon*, 695 F.Supp. at 972, *aff'd. sub nom. Luckett*, 966 F.2d at 209. Similarly, these procedures have not been required where the administrative agency in question has a purely "investigatory" function with no "adjudicatory" component. *See Hannah*, 363 U.S. at 451, 80 S.Ct. 1502; *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) (holding right to confrontation not implicated during SEC investigation of securities law violations).

However, confrontation and cross-examination are important procedural safeguards, especially where factual determinations are made. *See Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). Therefore, there are times when due process requires these procedures even during an informal administrative investigation. This requirement may be triggered when the function of the proceeding is to adjudicate rather than merely investigate claims. *See Hannah*, 363 U.S. at 451, 80 S.Ct. 1502; *see also Jenkins v. McKeithen*, 395 U.S. 411, 428–29, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (noting that confrontation and cross-examination are required where a possible result of an administrative agency investigation is public condemnation of the individual investigated for criminal activity). And it may arise when the investigators engage in important credibility determinations where the erroneous dismissal of meritorious claims without adequate review is a serious concern. *See Goldberg*, 397 U.S. at 269–70, 90 S.Ct. 1011 (finding confrontation and cross-examination required procedures during hearing where credibility determinations would be made prior to the termination of welfare benefits).

In the case before us, the contested procedure allows credibility determinations to be made at the Department investigation stage where confrontation and cross-examination are not available. While we do not conclude at this time that this procedure violates due process, we recognize that it does raise due process concerns. First, it is not clear from the record before us that the Department's function is solely "investigatory" as that term has been used in the due process context. In that context, an agency is purely "investigatory" only where it "does not and cannot take any affirmative action which will affect an individual's legal rights." *Hannah*, 363 U.S. at 441, 80 S.Ct. 1502. This is not a semantic distinction but a functional one. Agencies that are nominally titled "investigatory" may actually carry out functions that are more appropriately classified as "adjudicatory." *See id.* at 451, 80 S.Ct. 1502 (citing *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)); *see also Jenkins*, 395 U.S. at 427, 89 S.Ct. 1843. At least on the surface, the Department's dismissal of a civil rights claim, where that dismissal acts as a final disposition of the claim on the merits subject only to appeal, appears to be similar to a court's dismissal of a claim on summary judgment, a plainly adjudicatory act. Furthermore,

the district court found, under the low threshold showing required at the preliminary injunction stage, that the procedural safeguards that are available at the investigation stage and upon later review may not be adequate to prevent the erroneous dismissal of claims. On the record before us, it does not appear that the district court erred in making this determination. Therefore, we conclude that plaintiffs have demonstrated a more than negligible chance of success on this claim.

**b. File Access**

Plaintiffs also claim that the 1996 IHRA amendment changing the time at which they have access to the full investigation file and witness statements related to their claims violates their due process rights. Due process requires not only an opportunity to be heard but that this opportunity be afforded at a "meaningful" time. *Mathews*, 424 U.S. at 333, 96 S.Ct. 893. Plaintiffs contend that because there are increasingly deferential standards of review at each level of appeal, the opportunity to present a persuasive case is more meaningful at an earlier stage in the review process. They argue that access to their full file is necessary in order for them to make their most persuasive case before the Counsel. The Department responds that plaintiffs have access to documents such as the investigator's report, the notes they are permitted to take during the fact-finding conference, and the respondent's reply to their allegations of discrimination. The Department contends that these documents are sufficient to prepare for the initial appeal, and if this appeal is denied, plaintiffs have access to the full file before their appeal to the Illinois appellate court.

The standard of review for the Illinois appellate court is indeed highly deferential. *See Folbert v. Department of Human Rights*, 303 Ill.App.3d 13, 236 Ill.Dec. 463, 707 N.E.2d 590, 598–99 (Ill.App.1999) ("[T]he appropriate standard of review is whether the chief legal counsel abused her discretion.... The reviewing court cannot reweigh the evidence or substitute its judgment for that of ... the Department.... The agency's findings of fact are entitled to deference and this is particularly true of credibility determinations."); *Webb v. Lustig*, 298 Ill.App.3d 695, 233 Ill.Dec. 119, 700 N.E.2d 220, 226 (Ill.App. 1998). Furthermore, while the Counsel may conduct his own independent investigation of the charges and may speak to additional witnesses, these opportunities do not appear to be available at the second level of appeal. We do not conclude at this time that delaying plaintiffs' access to the full investigation file until the final stage of the appeal process denies them a meaningful opportunity to be heard before final dismissal of their claims. However, given the more deferential and less thorough review available at the final level of appeal, we also cannot conclude that the "mere" change in timing of access to information that may be necessary to prepare for the initial appeal will not result in the erroneous dismissal of claims. As we have noted above, the bar for showing a likelihood of success at the preliminary injunction stage is low. Plaintiffs have cleared it here.

**2. Irreparable Harm to Plaintiffs**

The second threshold showing plaintiffs must make is that they will suffer irreparable harm if a preliminary injunction is not granted. Plaintiffs' argument is based on our holding in *Luckett*, where we affirmed the district court's denial of retroactive relief to plaintiffs who were subject to constitutionally defective IHRA procedures. 966 F.2d at 214. We based our holding in that case on two grounds: 1) "retroactivity is not necessary to insure future compliance with due process;" and 2) the administrative burden which would result by requiring these claims to be reinvestigated would be significant. *Id.* Plaintiffs contend, and the district court agreed, that the logic we used in *Luckett* would apply here, so that retroactive relief would not be available if

a procedural due process violation is found. Therefore, plaintiffs would have no redress if their meritorious discrimination claims were erroneously dismissed during the pendency of this litigation because of procedures that were later found to be constitutionally inadequate.

Appellants argue that the review process, providing for appeal to the Counsel and Illinois appellate court, is sufficient to insure that plaintiffs' claims will not be erroneously dismissed awaiting the outcome of this litigation. While it is unclear what standard of deference applies to the Counsel's review, *see Cooper v. Bombela*, 34 F.Supp.2d 693, 699 n. 11 (N.D.Ill.1999) (noting that the statute requiring that the Counsel "must adopt Department's factual findings unless they are against the manifest weight of the evidence" has been repealed), the Illinois appellate court's review, at least, is highly deferential, *see id.*; *see also Folbert*, 236 Ill.Dec. 463, 707 N.E.2d at 598–99. This review is especially deferential to findings of fact, including credibility determinations, made at the Department level. *See Folbert*, 236 Ill.Dec. 463, 707 N.E.2d at 599. Furthermore, the second ground on which plaintiffs seek relief, the timing of access to their files, is a defect in the appellate process itself for which that process obviously does not serve as a cure.

Like the district court, we do not see any reason at this time why the logic of *Luckett* concerning retroactive relief would not apply here. In addition, we cannot conclude at this juncture that deferential appellate review is an adequate remedy for the alleged defects in the process of making factual findings at the Department level or in the appellate process itself. The district court did not err in finding that plaintiffs have made the required showing of irreparable harm.

### 3. Inadequacy of Remedy at Law

Plaintiffs must also make a threshold showing that any remedy at law would be inadequate. In using the term 'inadequate' "we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." *Roland Mach.*, 749 F.2d at 386. In this case, it is important to understand that plaintiffs are not seeking an adjudication on the merits of their discrimination claims. They are asking the district court to proscribe the use of certain procedures to resolve those claims. As noted above, it is unlikely that plaintiffs who have their claims erroneously dismissed during this litigation will be able to re-open their claims, even if it is found that their constitutional rights were violated. Plaintiffs have not requested, and the district court would not be able to grant, any legal relief in the event that the procedures are found to be defective. Thus, the district court did not err in concluding that plaintiffs have no adequate remedy at law.

### 4. Balance of Harm to Plaintiffs and Harm to Defendants

Once plaintiffs have made the required threshold showings, the court then balances the harms involved. First, the harm to plaintiffs of denying the preliminary injunction is balanced against the harm to the defendants of granting it. On appellate review, we must give substantial deference to the lower court's "discretionary acts of weighing evidence or balancing equitable factors." *Advent Elec.*, 112 F.3d at 274. In this case, the district court concluded that the balance weighed in favor of plaintiffs. We find nothing in the record before us at this stage of the proceedings to contradict the judgment of the lower court. Appellants have not demonstrated that returning to procedures that were in use for years would cause hardship substantial enough to outweigh the potential harm to plaintiffs.

### 5. Public Interest

Finally, we must consider the effect of granting the injunction on persons not directly involved in the litigation. The district court concluded that appellants made

no showing of "disservice" that would result to third parties from returning to pre–1996 procedures. *Cooper*, 34 F.Supp.2d at 701. The district court further found that returning to pre–1996 procedures would not result in "overly formal or complex procedures" that would burden future participants in the process. *Id.* The record below does not contain anything that would undermine the conclusions of the district court. As with the previous balancing test, we defer to the district court's determination on this issue.

### III.   CONCLUSION

The district court found that plaintiffs met the threshold showing required for a preliminary injunction and that the balance of the remaining factors weighed in plaintiffs' favor. We conclude that the district court did not abuse its discretion when it made this determination. For the foregoing reasons, the district court's grant of the preliminary injunction is

AFFIRMED.