Karen **WEIGAND**, individually and as guardian of Kelly and David Weigand; Beth Walker; individually and as guardian of Andrew, Carolyn, and Stephanie Walker, William Martens, individually and as guardian of Zachary and Samantha Martens; Michael and Susan Tulley, individually and as guardian of Ashlee, Lindsay, and Jessica Tulley; Marian Beisadecki, individually and as guardian of Amber, Laura, and Jenny Biesadecki; Anthony and Rita Loffredo, individually and as guardian of Ashley, Jeff, Kara, Katie Loffredo; Glenn and Laurie Henchel, individually and as guardian of Jimmy and Dana Henchel; Roland and Yvette Rowe, individually and as guardian of Ronny and Ryan Rowe; Dennis G. Supanich, Rose and Robert Sakanis, individually and as guardian of Jonathan and Dawn Sakanis, Plaintiffs,

v.

**VILLAGE OF TINLEY PARK**, a municipal corporation and body politic, Edward Zobrocki, Village President, Patrick Rea, David Seaman, Gregory Hannon, Michael Bettenhausen, Mathew Hefferan, and Brian Maher, in their official capacities as corporate trustees, Defendants.

No. 00 C 5059.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 21, 2000.

---

Burton S. Odelson, Odelson & Sterk, Ltd., Evergreen Park, IL, for plaintiffs.

Russell W. Hartigan, Hartigan & Cuisiner, P.C., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The Village of Tinley Park, Illinois, has an ordinance that makes it unlawful "to play any games upon any street, alley, or sidewalk, or other public places except when a block party permit has been issued by the President and the Board of Trustees." Tinley Park Ord.Code § 99.013. Section 10.02 of the Village Ordinances defines "public place" to include "any street, sidewalk, park, cemetery, school yard, or body of water." The ordinance is enforced by issuing tickets charging parents with "parental irresponsibility" for allowing their children to play on the sidewalk and street in front of their home. Some of the plaintiffs have been thus ticketed. Recourse to the state courts for declaratory judgment was unsuccessful. A state court has continued some of the plaintiff's cases until November 13, 2000.

The plaintiffs sued in state court, alleging violations of the due process clause of the 14th Amendment of the United States Constitution and of the Bill of Rights of the Illinois Constitution. They also attacked the ordinance as vague and overbroad; as violative of their right to assemble under the First Amendment of the United States Constitution and of the Illinois Constitution. They requested a TRO, and preliminary and permanent injunctions. The plaintiffs also sued for actual and punitive damages, plus reasonable attorney's fees, under 42 U.S.C. § 1983. Finally, the plaintiffs prayed for a declaration that the ordinance is unconstitutional on its face. The defendants removed to federal court. I grant these motions in part, and issue a preliminary injunction against the enforcement of the ordinance.

### I.

Injunctive relief is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). Five factors figure into the determination of whether a preliminary injunction should be granted. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 385–88 (7th Cir.1984). As a threshold matter, the plaintiff must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir.1999). Once this threshold showing is made, I balance (4) the harm to the plaintiff if the preliminary injunction were wrongfully denied against the harm to the defendants if the injunction were wrongfully granted, and (5) the impact on persons not directly concerned in the dispute (the "public interest"). *Id.*

■ The plaintiffs have come forward with enough to persuade me by a preponderance of the evidence that they have a likelihood of success on the merits. The ordinance appears to be, at the very least, vague and substantially overbroad. On its face, it would prohibit children from playing tag at recess in the schoolyard without a block party permit from the Village President and the Board of Trustees; likewise it would apparently bar a child from playing with his Gameboy on the sidewalk, or kids from playing in a pool or river—bodies of water—or skating in the park without obtaining a permit, and similar absurdities.

■ The defendants reply that the ordinance is a valid assertion of the state's police powers. They say, correctly, that

unless a fundamental right is implicated, regulation will be upheld if it bears a rational relation to a legitimate state end. They cite a state case for this, but that is also the federal standard. *See Gillespie v. City of Indianapolis,* 185 F.3d 693, 708–9 (7th Cir.1999). The defendants argue that there is no fundamental liberty interest in playing games in the street or other public places, and I agree. However, the asserted legitimate state end that this ordinance promotes is too narrow to support the ordinance.

According to the defendants, this state end is to keep alleys and motorways clear for use by vehicles so that individuals playing games will not be run over, and to protect passersby on the sidewalks from being injured by game players. That does not explain the absolute prohibition against games in schoolyards, parks, and pools, not to mention other venues apparently designed for games. Neither does it warrant the prohibition of harmless games in other venues, even on the sidewalks or perhaps the streets. Under the law I cannot play chess on the sidewalk without obtaining a permit, but how might that injure anyone? If bicycle riding is a game, may I not play it in the streets or on the sidewalks of Tinley Park without a permit?

A regulation prohibiting only game-playing *in the streets and alleys* that put others or self at risk might be constitutional under rational basis review (if "game" could be comprehensibly defined—more on this below). But this ordinance is broader. The statute is not rationally related to its stated end, or the plaintiffs have made a substantial showing to that effect.

## II.

■ Moreover the plaintiffs argue that there *is* a fundamental right involved, the First Amendment Right to assemble. This would implicate strict scrutiny, not a rational basis review, and so the regulation would be upheld only if it were narrowly tailored to serve a compelling government interest. *See Gillespie,* 185 F.3d at 708. The ordinance clearly sweeps in much protected conduct. A game might be part of a political protest, to take the clearest case ("Bean the 'capitalist' with a cream pie!"). Moreover, expressive game playing need not be political to be protected. If "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so," *Barnes v. Glen Theatre,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), surely innocent game playing may be protectable expressive conduct as well.

The defendants argue that the ordinance will not interfere with the right to assemble as long as its exercise does not involve game playing on streets, sidewalks, and other public places, which is sort of like saying that an anti-syndicalism statute does not prohibit the exercise of free speech except by anarchists, communists, and other lowlifes. The defendants also argue that they may regulate the use of streets and alleys, prohibiting conduct that has the tendency to endanger persons or property, which is fair enough. However, that is not a compelling state interest. Reasonable time, place, and manner regulation is OK, but an absolute bar against any game playing in the stated venues is not reasonable time, place, and manner regulation. Indeed, the regulation might plausibly be argued to be content-based, not content-neutral, insofar as playing a game could be the content of the expressive activity.

Moreover, even if the asserted interest were compelling, the plaintiffs have made a case that the regulation here is not narrowly tailored; indeed, that it is substantially, even ridiculously, overbroad. *See New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (A statute is substantially overbroad if it "reaches a substantial number of impermissible applications."). If so, I could strike down the law on its face, even if the rights of the plaintiffs before the court were not violated. *Id.* at 769, 102 S.Ct. 3348. If the ordinance fails the weaker rational basis test because it prohibits too much conduct in a way that will not promote the stated

end, as I have held above, it will certainly flunk the stronger strict scrutiny tests for narrow tailoring or substantial over-breadth.

Moreover, plaintiffs have made a plausible showing that the statute is impermissibly vague. The term "game" is exceedingly vexed and difficult, as the philosopher Ludwig Wittgenstein explained in a famous passage:

> Consider for example the proceedings that we call "games.". I mean board-games, card-games, ball-games, Olympic games, and so on. What is common to them all?—Don't say: "There must be something common, or they would not be called 'games' "—but look and see whether there is anything common to all.—For if you look at them you will not see something that is common to all, but similarities, relationships, and a whole series of them at that. To repeat: don't think, but look!—Look for example at board-games, with their multifarious relationships. Now pass to card-games; here you find many correspondences with the first group, but many common features drop out, and others appear. When we pass next to ballgames, much that is common is retained, but much is lost.—Are they all "amusing"? Compare chess with noughts and crosses [tic tac toe]. Or is there always winning and losing, or competition between players? Think of patience. In ball games there is winning and losing; but when a child throws his ball at the wall and catches it again, this feature has disappeared. Look at the parts played by skill and luck; and at the difference between skill in chess and skill in tennis. Think now of games like ring-a-ring-a-roses; here is the element of amusement, but how many other characteristic features have disappeared! And we can go through the many, many other groups of games in the same way; can see how similarities crop up and disappear. And the result of this examination is: we see a complicated network of similarities overlapping and criss-crossing: sometimes overall similarities, sometimes similarities in detail.

Ludwig Wittgenstein, *Philosophical Investigations* §§ 66–67, at 31–32 (G.E.M. Anscombe trans., Macmillan Publishing Co.3d ed.1958). (For further discussion of the concept of a game, multiplying complications, *see* Bernard Suits, *The Grasshopper: Games, Life, and Utopia* (1978).)

Because the term "game" is not defined or otherwise restricted in the ordinance, the law " 'fails to articulate with any specificity the conduct to be proscribed, ... [and so] might not provide fair warning,' " *Wiemerslage v. Maine Twp. High Sch. Dist.* 207, 29 F.3d 1149, 1151 (7th Cir.1994) (*quoting Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). It risks " 'confer[ring] on law enforcement and judicial officers an inordinate amount of discretion which easily translates into arbitrary or even discriminatory application.' " *Id.* Is bicycling a game? Juggling? What about Pokemon? Suppose I am trading Pokemon cards but not trying to beat the other player? And so forth. The citizens of Tinley Park do not know what is prohibited.

### III.

The showing of irreparable harm is evident: if people are being unconstitutionally cited because their kids are prohibited from playing games on the streets, every day that this police state behavior continues, thus confining children to their homes and barring potentially protected expressive activity in public places in a sort of house arrest, is an irreparable injury. There is no remedy at law for this: the plaintiffs want freedom to play in their public places without a permit, not mainly money to recompense them for that deprivation. The money that they request is incidental.

The defendants will suffer no legitimate harm: their legitimate ends in keeping the streets and sidewalks safe for pedestrians can be pursued through other ordinances,

such as those banning jaywalking or disorderly conduct.

The public will not be harmed and will be benefitted by granting the preliminary injunction because children will be able to play harmless games in the schoolyards, on the sidewalks, in the water, and other appropriate places, without fear of the police harassing their parents.

## IV.

■ The defendants ask me to abstain under the theory that there are parallel proceedings in the state courts. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). They argue that at least some of the plaintiffs are before the state courts because they were cited for violations of the ordinance. I remark that the plaintiffs went to the state courts—the action is before me because the defendants removed it here.

■ Be that as it may. The circumstances do not justify abstention. In assessing whether they do, I first consider whether the actions are parallel, *i.e.,* involve substantially the same parties litigating substantially the same issues in two different courts. *See Schneider Nat'l Carriers, Inc. v. Carr,* 903 F.2d 1154, 1156 (7th Cir.1990). There are parties in the federal action who are not parties to the state action, but "[t]he existence of additional parties in one suit does not itself destroy parallelism." *Id.* The issue before the state court is the citation for "parental irresponsibility" and the challenge before me is to § 99.013. The constitutionality of § 99.013 was raised in the state court and is challenged here, but the action before me includes a claim for damages under 42 U.S.C. § 1983 that will not be resolved in the state court prosecution. Because the record is unclear with regard to the issues currently pending before state court, I will assume that the parties and issues are parallel.

■ However, I decline to abstain under *Colorado River.* My duty with regard to *Colorado River* abstention is not to justify federal jurisdiction, but to determine if there are exceptional circumstances which would make it proper to abstain. I should decline to exercise jurisdiction only in the "exceptional circumstance" where the order to the parties to repair to the state courts " 'would clearly serve an important countervailing interest.' " *Sverdrup Corp v. Edwardsville Community Unit Sch. Dist. No. 7,* 125 F.3d 546, 549 (7th Cir.1997) (*quoting Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). Most relevant here are: (1) whether the forum is inconvenient to the party seeking abstention, (2) the source of the governing law, (3) whether abstention would avoid piecemeal litigation, and (4) whether the federal claim is "vexatious or contrived" in nature. *See Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 701 (7th Cir.1992) (listing factors a court may consider in deciding whether to abstain). Where the consideration is judicial economy, the balance weighs heavily in favor of federal courts exercising jurisdiction. "Only the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236.

Such justification is wanting here. There is nothing exceptional about this case. The federal forum is not inconvenient to the defendants—they chose to remove this case. The questions in the case, as the defendants have pointed out, are governed by federal constitutional and statutory law. Because the issue of damages under 42 U.S.C. § 1983 is before me and not before the state court, abstention would not necessarily avoid piecemeal litigation. And there is nothing to suggest that the plaintiffs' claims before me are "vexatious or contrived." On the contrary.

## V.

I therefore Grant the plaintiff's motion for a preliminary injunction, enjoining the Village of Tinley Park or any of its officials from enforcing § 99.013 of the Village Ordinances. The plaintiffs' other motions for damages, attorney's fees, and costs, are

DENIED as premature, and will be discussed after argument in a motion for a permanent injunction.